## E. C. FREMEAUX & SON, Inc., v. LEGER.

### No. 2071.

Court of Appeal of Louisiana. First Circuit.

Jan. 30, 1940.

Rehearing Denied March 4, 1940.

Pugh & Buatt, of Crowley, for appellant.

Bruner & Chambers, of Crowley, for appellee.

LE BLANC, Judge.

The plaintiff in this suit, E. C. Fremeaux and Son, Inc., a corporation engaged in the hardware and farm supplies business at Rayne, Louisiana, claims to have sold to the defendant, George Leger, on August 1, 1937, a No. 2 McCormick-Deering 7 Ft. power-drive rice binder complete and also a McCormick all steel truck wagon, for the price and sum of $482.25 on which, it alleges in its petition that the defendant paid the sum of $178.57, leaving a balance due of $303.68 for which amount it claims a vendor's lien and privilege on the property. Having made the necessary allegations and having furnished the affidavit and bond required it obtained an order of sequestration under which the property was seized by the Sheriff of Acadia Parish, it being alleged that the property was situated in that Parish, within the jurisdiction of the district court.

The defendant answered, denying that he owed the plaintiff the amount claimed by it, and alleging that he had sold the rice binder and truck wagon to one Mervine E. Floyd, a resident of Acadia Parish, on January 25, 1938, for the sum of $485, cash. Floyd then intervened in the suit and claimed the property as his by virtue of the alleged purchase he had made from the defendant.

An answer was filed by the plaintiff to the intervention in which it is set out that the purported sale made to Floyd is a mere paper title, a sham and simulation, and that no consideration passed from Floyd to Leger, and that the same was made in furtherance of a plan concocted to defraud plaintiff out of its rights in and to the said property.

After trial below there was judgment in favor of the plaintiff maintaining the writ of sequestration, and recognizing its vendor's lien and privilege on the property, and dismissing the intervention. The intervenor Floyd alone has appealed.

From the record it appears that late in the fall of 1936, the defendant Leger who was indebted to the plaintiff paid certain sums of money on his account in order to obtain further advances to purchase machinery which he needed in order to enable him to make a crop of rice in the Parish of Vermillion during the year 1937. The statement of the account covering their transactions showed that he had a balance due him as of date January 1, 1937. In the beginning of that year plaintiff agreed to make him advances of money, goods, wares and merchandise needed to make his crop of 1937 and from the statement it is observed that the advances so made to him about offset his credit prior to February 1, 1937. He then granted the plaintiff a lien and privilege on his crop and later on he bought certain machinery and equipment which were charged to his open account. It was in April, 1937, that he bought, with other machinery and equipment, the rice binder and truck wagon in contest in this litigation. These were also charged to his open account. It further appears that some time in January 1937 he granted a chattel mortgage to the plaintiff on certain machinery and equipment which he had purchased but the rice binder and truck wagon were not included in the property mortgaged. The general account shows that he was credited with the amount of the chattel mortgage notes given by him on the machinery mortgaged but which, as just stated, did not include the property involved in this contest. His early crop of rice was sold and the proceeds were received by the plaintiff on the account. The late crop was harvested and stored in a warehouse at Gueydan, Louisiana, the defendant obtaining warehouse receipts which he delivered to the plaintiff. On or about January 20, 1938, plaintiff had an offer for the sale of this rice and presumably did sell it for shortly thereafter the defendant called at its office for an accounting of the sale at which time he was given a statement showing the probable balance which he owed with the exception of the chattel mortgage note or notes which were in the hands of some finance company. At that time, plaintiff requested from Leger authority to obtain the return of the machinery which

he had purchased as well as the machinery on which the chattel mortgage notes bore, and the testimony seems to be very probable that Leger consented and agreed that the binder and truck wagon would be delivered to plaintiff with authority to sell the same to the best advantage in order to liquidate the balance on his account.

It was at this time that Leger seemed to have gotten the impression that he did not owe as great a balance as was indicated on the account and that he sought the intervenor for the purpose of disposing of the binder and truck wagon. The vital point at issue in the case is the one surrounding the circumstances and the facts relating to the purported sale to Floyd. The testimony relative thereto is not very impressive.

The intervenor testifies that his principal business is that of renting musical instruments known as "nickelodeons", and that he also operates a pressing shop in the Town of Rayne. His interest in farming is limited to renting two or three small properties which he owns to farmers. He states that Leger called on him to sell him the rice binder and truck wagon, assuring him that there were no chattel mortgages or any liens bearing against the same and at that time showed him a statement he had received from plaintiff which showed a balance due thereon of only $2.65. He then consulted a man by the name of Bailey, a Notary Public in the Town of Rayne and they with the defendant went to Crowley the Parish seat of Acadia Parish to find out whether or not there were any mortgages or liens on the property which Leger had offered him. Finding none recorded, they then went to Abbeville, the Parish seat of Vermillion, in which the property was then situated for the same purpose. As the property appeared to be free and clear of any encumbrances, they then went to Gueydan and appeared before a Notary there by the name of Mr. Saal for the purpose of having the sale executed before him. There was quite an extended conversation in Mr. Saal's office, it appearing from the testimony that Leger wanted $500 for the property and certain other considerations. Floyd made him a flat offer of $485 which was finally accepted by Leger and Mr. Saal then prepared the act of sale which was signed.

In his testimony the intervenor is corroborated to a great extent by both Bailey and Leger. They all agree that the money was paid in currency, all in twenty dollar bills with the exception of one which was of five dollars. The intervenor states that he had the money on his person and counted it out in the presence of Bailey and another witness named Connie Hall. There is a discrepancy as to the exact time at which the payment was made, that is whether it was before they went to inspect the property and obtain a constructive delivery, or after they had done so and returned to the Notary's office.

The evidence is to the effect that after the sale had been signed, Leger, Floyd, Hall and Bailey together went to the property where the binder and truck wagon were situated, it being then after dark and necessary for them to use a flashlight in order for the intervenor to see what he had bought. According to this testimony he then put his hand upon each article stating at the same time "this is my property" in order to complete the sale by delivery, upon the advice of Mr. Bailey, the Notary.

The next morning, in accordance with what it understood had been its agreement with defendant, plaintiff sent some of its employees to the place where the property was situated in order to get it and take it back to Rayne. They were there met by Floyd and Bailey who objected to their moving it, claiming that Floyd, the intervenor had purchased it and that it was his property. Plaintiff's employees then started to go to Gueydan where they could telephone their employer what had happened and on the way met the defendant Leger. According to them, at Leger's own suggestion they returned to the location of the property having been informed by him that he could straighten the matter out for them. They were unable to obtain any satisfaction however and they returned to Rayne. The intervenor then removed the property to some farm which he owned in Acadia Parish where it was sequestered in this suit.

The trial judge did not assign written reasons for judgment but there can be no doubt that he looked upon the circumstances and the facts surrounding the transaction involving the purported sale from the defendant to the intervenor with suspicion and this no doubt influenced him in deciding the case against the intervenor in favor of the plaintiff. The precipitate manner in which the transaction was concluded, the hour at which it took place and the attitude of the defendant on two occasions at least when he assured plaintiff's officers or its

agents that he could straighten the matter out all cast serious doubt in our minds as to the legitimacy of the alleged sale. The intervenor is not actively engaged in the farming business and why he would have been so anxious to consummate a transaction involving the sale of this binder and truck wagon is not explained to our satisfaction. Besides, it seems unreasonable that a man who is not a farmer would disburse $485 in payment of a second hand rice binder and truck wagon which he had never seen before and would only want to satisfy himself regarding its condition by an inspection made at night with the aid of a flashlight. It strikes us moreover that Mr. Saal, the Notary Public, before whom the act of sale was passed would have been a very important witness to corroborate what the parties to the sale say transpired in his office at the time and no reason is given why he was not called as a witness in the case.

The case, as already indicated, is one which depends entirely upon a question of fact and upon the credibility of the witnesses who testified. In such a case, especially where there is a question of fraud involved, the Appellate Court will give unusual weight and consideration to the findings of the trial judge. In this case, we are unable to agree with counsel for the intervenor that the district judge erred in his findings and for that reason have concluded to affirm the judgment.

Judgment affirmed.